NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Juan Carlos SALINAS,

      Plaintiff,

v.

John DOE, administrator of the estate of John
Abroult, deceased and d/b/a/ Abroult Aviation,
and GEO-MARINE, INC.

      Defendants.

Civ. No. 10-3244

OPINION & ORDER

THOMPSON, U.S.D.J.

## I.  INTRODUCTION

This matter has come before the Court upon Defendant Geo-Marine, Inc.'s ("GMI")

Motion to Dismiss [docket # 4].  Upon consideration of the parties' briefs, the Court determined

that, as the motion raised issues of fact not alleged in Plaintiff's Complaint, it could not be

properly considered as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  However, since the

facts at issue did not appear to be in dispute, the Court decided to consider the motion as one for

summary judgment under Fed. R. Civ. P. 56, and it ordered the parties to submit whatever

evidence they believed was necessary to support their respective positions.  The Court has

considered these additional submissions as well as the parties' briefs and has determined that this

motion is appropriate for disposition without oral argument.  For the reasons given below, the

motion is DENIED.

## II.  BACKGROUND

Defendant GMI hired Plaintiff Juan Carlos Salinas to gather information on wildlife off

of the New Jersey coast during the winter and spring of 2008.  On May 17, 2008, as part of

Plaintiff's employment, GMI hired John Abroult to transport Plaintiff over the Atlantic Ocean so that Plaintiff could conduct aerial wildlife surveys.  The airplane crashed while attempting to land at Eagles Nest Airport in West Creek, New Jersey, killing Abroult and injuring Plaintiff. Plaintiff, a citizen of Mexico, brought this lawsuit against both Abroult's estate and GMI, alleging that the crash was a result of pilot error and that GMI breached its duty to exercise reasonable care in selecting an aerial survey company.  GMI is a Texas corporation with its headquarters in Texas that maintains offices in several states, including Texas and New Jersey. GMI participates in Texas's workers' compensation program, having purchased workers' compensation insurance that covers its employees, including Plaintiff.[1]

The Complaint was filed in New Jersey Superior Court in Ocean County on May 12, 2010, and Plaintiff mailed the Complaint and Summons to Defendants on May 27.  Defendants removed the case to federal court on June 24, and GMI filed this motion to dismiss in lieu of an answer on June 30.  GMI contends that it is immune from suit by virtue of the immunity afforded it under Texas's workers' compensation law.

III. <u>ANALYSIS</u>

A. <u>Standard of Review</u>

Summary judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).

---

[1] Plaintiff alleges that GMI also participates in New Jersey's workers' compensation scheme and is currently paying Plaintiff benefits under that scheme, though he has produced no evidence in support of these contentions.  In any event, the truth of these allegations is irrelevant to the disposition of the instant motion.

More specifically, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party.  *Id.* at 248-49.  Accordingly, if the movant's motion is supported by facts, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

While a party moving for summary judgment must, of course, produce evidence supporting those elements essential to its case, it is not obliged to produce evidence specifically disproving those elements essential to its adversary's case.  The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial.  *Id.* at 323-24.

B.  <u>Choice of Law</u>

The central point of dispute between the parties at this juncture is whether Texas law or New Jersey law governs.  Both Texas and New Jersey make recovery of workers' compensation benefits the exclusive remedy of an employee covered by workers' compensation insurance; employers who provide such insurance gain immunity from lawsuits arising out of employee injury. Tex. Lab. Code Ann. § 408.001; N.J. Stat. Ann. § 34:15-8.  Both states make several exceptions to this general immunity, but the exceptions differ between the two states.  Relevant to this case, New Jersey law provides that the immunity that workers' compensation law affords employers is inapplicable when the injury in question is the result of "intentional wrong."  N.J. Stat. Ann. § 34:15-8.  Texas law does not have an analogous exception.  In this case, Plaintiff contends that GMI committed an intentional wrong in hiring Abroult to fly Plaintiff over the

3

Atlantic Ocean.  Therefore, according to the facts alleged, Plaintiff may maintain a lawsuit against GMI under New Jersey law but not under Texas law.

A federal court exercising diversity jurisdiction is bound to apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  New Jersey uses governmental-interest analysis to determine what state's law to apply in a case. *Veazey v. Doremus*, 103 N.J. 244, 247 (1986).  Under this analysis, the Court first determines, on an issue-by-issue basis, whether there is a conflict between the law of the different states with an interest in the case. *Id.* at 248.  If there is a conflict, "the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Id.*  Ultimately, the Court "must apply the law of 'the state with the greatest interest in governing the particular issue.'" *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 622 (2007) (quoting *Veazey*, 103 N.J. at 248).  The only issue presently before the Court is whether or not this lawsuit is barred by workers' compensation tort immunity.  As discussed above, the law of New Jersey is plainly in conflict with the law of Texas on that point.  Therefore, the Court must proceed to step two of governmental-interest analysis and determine which state has the greater interest in governing that issue.

The New Jersey Supreme Court has already had a couple of occasions to apply governmental-interest analysis to choice of law questions addressing exceptions to the workers' compensation exclusive remedy rule, and their opinions guide this Court's evaluation.  In *Eger v. E.I. DuPont DeNamours Co.*, the New Jersey Supreme Court confronted the situation where a New Jersey resident working for a New Jersey subcontractor was injured while working on a project in South Carolina.  110 N.J. 133 (1988).  The New Jersey resident sought to bring a tort action against the project's general contractor. *Id.*  Under New Jersey law, general contractors were not required to hold workers' compensation insurance covering subcontractors' employees

and did not enjoy immunity from such employees' lawsuits.  *Id.* at 137.  By contrast, South Carolina law did require general contractors to hold insurance covering subcontractors' employees, and the law granted them a corresponding immunity.  *Id.* at 137-38.  In holding that South Carolina law governed—and barred the tort action—the New Jersey Supreme Court explained that South Carolina's interest in applying and effectuating its workers' compensation scheme outweighed New Jersey's countervailing interests, which it identified as allowing additional compensation to its injured worker and permitting a subcontractor to be reimbursed for its compensation payments.  *Id*. at 141-43.  The court noted that the coverage-for-immunity quid pro quo is a fundamental component of the workers' compensation system.  *Id.* at 143.  It concluded that this quid pro quo would be disrupted if New Jersey law applied and held a general contractor liable after that contractor has already paid for coverage under South Carolina law.  *Id.*  By contrast, New Jersey's interest in compensating its injured workers would be adequately satisfied by applying South Carolina law because the injured worker could recover workers' compensation.  *Id.*

In reaching this conclusion, *Eger* reaffirmed an earlier New Jersey Supreme Court case, *Wilson v. Faull*, 27 N.J. 105 (1958).  *Wilson* featured circumstances almost identical to *Eger*. The plaintiff, a New Jersey resident, was injured while working for a New Jersey subcontractor at a job site in Pennsylvania.  *Id.*  He sought to sue the general contractor under New Jersey law, which did not grant immunity to general contractors, while Pennsylvania law operated in the same way that South Carolina law did in *Eger*, requiring insurance from and granting immunity to the general contractor.  *Id.* at 112-14.  The court ruled that "the law of the state in which the employer has provided compensation insurance and whose law granted such immunity" should govern.  *Id.* at 117-18.  The justices noted that workers' compensation is a "system of mutual give and take [that] would be upset if the employee could sue for negligence in another

5

jurisdiction" (*id.* (quoting *Jonathan Woodner Co. v. Mather*, 210 F.2d 868, 873 (D.C. Cir. 1954)).  The court concluded that "[a]pplication of the Pennsylvania law in this situation is not obnoxious to our public policy" (*id.* at 123), reasoning that "[c]hoice of law in the situation presented here . . . . should be founded on broader considerations of basic compensation policy which the conflicting laws call into play, with a view toward achieving a certainty of result and effecting fairness between the parties within the framework of that policy" (*id.* at 124).  The court thought that a difference in the designation of the person bearing primary responsibility for coverage did not trump the broader policies behind workers' compensation law.  *See id.* at 123. Having been decided in 1958, *Wilson* predates New Jersey's adoption of governmental-interest analysis, but according to the *Eger*, the case remains good law because it "represents an accurate balancing of the interests involved."  *Eger*, 110 N.J. at 140.

     *Wilson* and *Eger* clearly indicate that a court undertaking governmental-interest analysis with respect to choice of law in a case that implicates workers' compensation must accord heavy significance to each state's interest in fostering participation in the workers' compensation system, which is founded upon the premise that both employers and employees benefit from the creation of a no-fault regime funded by employers' insurance contributions and limited to predictable payouts.  However, neither *Wilson* nor *Eger* controls the case at bar because both of those cases are different from this case in one important respect:  In this case, the employment and the injury at issue took place within New Jersey, while *Wilson* and *Eger* both featured employment and injuries that occurred outside the forum state.  Consequentially, in this case New Jersey has an additional interest that neither *Wilson* nor *Eger* analyzed—i.e., its interest in regulating the conduct and welfare of employers and employees operating within its borders. *See Eger*, 110 N.J. at 140 (holding that South Carolina had an interest "in protecting the welfare of persons working within its borders [and] affixing responsibility for that protection"); *see also*

*Fu v. Fu*, 160 N.J. 108, 126 (1999) (holding, in the context of a torts case, that "a state has an obvious interest in regulating the conduct of persons within its territory") (quoting *Restatement (Second) of Conflict of Laws* § 145 cmt. d.).

       With this framework in mind, the Court may proceed to compare the states' respective interests in the case and the relationship those interests bear to this litigation.  New Jersey's interests in this case are, as noted above, providing compensation for its injured workers and regulating conduct within the state.  Texas's interest in this case is encouraging participation in its workers' compensation scheme.  As both *Wilson* and *Eger* make clear, New Jersey's interest in providing compensation should be considered as adequately addressed by Texas law, which would grant relief under the workers' compensation process.  Therefore, the choice of law question in this case turns on whether New Jersey's conduct-regulation interest or Texas's workers compensation participation interest is more substantially intertwined with this case.

       For reasons that will be explained presently, the Court concludes that while this case clearly affects Texas's interest is in encouraging employer participation in the workers' compensation scheme, it has a greater impact on New Jersey's interest in regulating conduct within its borders.  The Court reaches this conclusion for two reasons.  First, since New Jersey makes participation in workers' compensation mandatory while Texas only makes participation voluntary, New Jersey law possesses an additional mechanism for promoting Texas's interest in this case.  By contrast, Texas law does not possess any additional mechanism that promotes New Jersey's interest in this case.  Therefore, New Jersey's interest in conduct regulation stands to suffer more if Texas law is applied than does Texas's interest in encouraging participation in workers' compensation if New Jersey law is applied.  Second, New Jersey case law demonstrates that a state's interest in regulating conduct within its borders should be afforded significant weight when resolving a choice of law issue.  Therefore, to the extent that New Jersey's and

Texas's interests in this case are simply irreconcilable, New Jersey's interest in conduct

regulation should be considered the interest of overriding importance.

     Under Texas law, employer participation in workers' compensation is voluntary.  Tex.

Lab. Code Ann. § 406.002.  Therefore, Texas relies mainly on the tort-immunity mechanism to

foster employer participation in the workers' compensation arrangement.  The broader the

immunity that this arrangement confers, the stronger the incentive will be for employers to join.

Texas law—which extends tort immunity to cover even those injuries caused by an intentional

wrong—therefore creates a stronger incentive for employers to participate in workers'

compensation than does New Jersey law—which does not.  However, every employer in New

Jersey is required by state law to maintain insurance that will cover any obligations it may incur

under the workers' compensation law.  N.J. Stat. Ann. §§ 34:15-71, 34:15-72.  This requirement

is backed up by the threat of fines and criminal punishment.  N.J. Stat. Ann. § 34:15-79; N.J.A.C.

§ 12:235-31.1.  The threat of fines and criminal punishment is a substantial force encouraging

employers to maintain workers' compensation insurance.  Therefore, while New Jersey law loses

some of the incentive effect provided by tort immunity by allowing injured workers to maintain

tort suits for intentional wrongs, the state makes up for that loss by using the threat of civil fines

and criminal punishment as an additional incentive to encourage participation.  It is, perhaps,

debatable whether the threat of fines and criminal punishment completely makes up for the

incentive effect that is lost by making employers liable for intentional wrongs.  But it must be

admitted that such a threat has much more than marginal incentive effects.  It is therefore

appropriate to conclude that the application of New Jersey law in this case will not substantially

impair Texas's interest in encouraging employer participation in workers' compensation.

     By contrast, Texas law does not possess a mechanism that will address New Jersey's

interest in regulating conduct within New Jersey.  By allowing employees to maintain tort

actions for injuries caused by "intentional wrong," New Jersey demonstrates an interest in deterring employers from engaging in harmful conduct or knowingly allowing harmful work conditions to persist.  While Texas law has some deterrence mechanisms, they are substantially narrower than New Jersey's.  Texas permits lawsuits for intentional torts, such as battery (*see Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex. 1981)), and it creates an exception from immunity for exemplary damages actions in wrongful death cases (Tex. Lab. Code Ann § 408.001(b)).  These are substantially narrower categories than New Jersey's general exception for all injuries that are the result of intentional wrongs.  Intentional torts cover only a small subset of injuries that are attributable to "intentional wrongs."  Permitting exemplary damages in wrongful death cases is not a substantial deterrent mechanism because this exception does not apply in the vast number of cases where the injury at issue is not fatal.  Therefore, while Texas law provides a couple mechanisms that deter harmful employer conduct—and thereby address New Jersey's interest in regulating conduct—these mechanisms do not have a comparable deterrent effect that New Jersey law achieves through the exception to tort immunity for all intentional wrongs.

To summarize the comparison, New Jersey law, by creating a broad exception to tort immunity, loses some of the incentive effect encouraging participation in workers' compensation that Texas law has, but New Jersey substantially makes up for that loss by making participation in workers' compensation mandatory.  Texas law, by giving employers immunity even for intentional wrongs, does not deter harmful conduct to the same extent that New Jersey law does by making employers liable for such wrongs, and Texas does not make up for this lost deterrence through any comparable mechanism.  Therefore, while applying New Jersey law would not substantially impair Texas's interest in this case, applying Texas law would substantially impair

New Jersey's interest in this case.  Therefore, New Jersey has more at stake in this litigation, and under governmental-interest analysis, the Court should apply New Jersey law.

Furthermore, even if it were determined that New Jersey law does not do a better job of protecting Texas's interests than Texas law does of protecting New Jersey's interests, New Jersey law should still be applied because—all else being equal—conduct regulation is a weightier interest than workers compensation participation. Although there are no workers' compensation cases that address this point, in other areas of law the New Jersey Supreme Court has consistently considered conduct regulation as a paramount interest for purposes of choice-of-law analysis.  Most recently, in *P.V. ex rel. T.V. v. Camp Jaycee*, the New Jersey Supreme Court held that New Jersey's rule exempting charitable organizations from tort immunity did not apply in a case where a camper residing in New Jersey was sexually abused at summer camp located in Pennsylvania but operated by a New Jersey charity.  197 N.J. 132 (2008).  Although, as a tort case, the court's analysis followed a somewhat different path than what it has used in workers' compensation cases, the court's remarks suggest a special regard for conduct regulation that should apply in multiple contexts.  The court saw the case "[e]ssentially" as a conflict between "New Jersey's post-event loss-allocation policy and Pennsylvania's conduct-regulation and redress policy."  *Id.* at 151.  As between those policies, the court concluded that the conduct-regulation policy was more "deeply intertwined" with the case.  *Id.* at 156.  The court observed that if tort law was "to have any deterrent impact . . . it must be applied in situations where tort-feasors repeatedly perform their tasks within the state."  *Id.* at 152.  The court approvingly quoted a dissenting opinion in a New York Court of Appeals case for the proposition that the "State has a paramount interest in preventing and protecting against injurious misconduct within its borders" and that "this deterrence function of tort law, whether it be in the form of imposing liability or denying immunity, is a substantial interest of the locus state which is almost

universally acknowledged by both commentators and the courts to be a prominent factor deserving significant consideration in the resolution of conflicts problems." *Id.* at 149 (quoting *Schultz v. Boy Scouts of America, Inc.,* 480 N.E.2d 679, 691-92 (N.Y. 1985) (Jasen, J., dissenting)).

Other New Jersey cases—at both the supreme and appellate division levels—are in accord with the weight that the *Camp Jaycee* decision places on conduct regulation as an important state interest. *See, e.g., Fu v. Fu*, 160 N.J. 108, 136 (1999) (applying New York's law imposing vicarious liability on automobile owners in a case involving an automobile crash by New Jersey driver within the state of New York, explaining that "New York's underlying goals of compensation and deterrence bear a closer relationship to an accident in that state than does New Jersey's goal of shielding its residents from liability without fault"); *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 526-46 (1993) (holding that New Jersey law applied to claims of unlawful termination brought by a Swiss resident working in Switzerland against a New Jersey corporation because the law at issue in the case was intended to regulate the New Jersey corporation's conduct); *Cornett v. Johnson & Johnson*, 414 N.J. Super. 365, 998 A.2d 543, 553 (App. Div. 2010) (applying Kentucky law in a products liability case featuring an injury that occurred in Kentucky caused by a product manufactured by the subsidiary of a New Jersey corporation because applying New Jersey law would impair Kentucky's ability to regulate conduct within its borders) (citing *Camp Jaycee*, 197 N.J. at 153-54). These cases reflect what is, at bottom, a very commonsense proposition—a state's deterrence of harmful conduct within its borders is a fundamental, if not *the* fundamental, responsibility the state has to its citizens. The creation and careful adjustment of tort liability is an effective way of exercising this responsibility. To the extent that Texas and New Jersey differ in their estimation of how this interest ought to be weighed against the competing goal of encouraging participation in workers'

compensation, New Jersey must be accorded the final say on how that balance is struck with respect to what goes on inside its own borders.  Consequentially, New Jersey's interests have the greater weight in this case, and New Jersey law should be applied.

This result comports squarely with the reasoning in both *Wilson* and *Eger*.  In both those cases, the New Jersey Supreme Court reached its conclusion only after identifying and considering the interests that New Jersey had in applying its law to the case at hand.  Following *Wilson* and *Eger*, this Court has considered the interests that New Jersey has in applying its law to this case.  In both those cases, the New Jersey Supreme Court concluded that New Jersey's interests—providing compensation and allocating losses—were either fairly protected by the law of the other state under consideration or else outweighed by the importance of promoting workers' compensation.  In this case, however, Texas law does not fairly protect New Jersey's interest in regulating conduct that occurs inside New Jersey.  Furthermore, that interest must be accorded substantial weight for purposes of governmental-interest analysis, suggesting that to the extent there is any irreconcilable conflict between the two states' interests, New Jersey's interests control.

Since New Jersey law applies, GMI is not entitled to immunity under Texas law.  As this was the sole ground upon which Defendant based its motion, that motion must be denied.

IV. <u>CONCLUSION</u>

For the foregoing reasons, IT IS, this 14th day of September 2010, ORDERED that Defendant Geo-Marine, Inc.'s Motion to Dismiss [4] is DENIED.

<u>/s/  Anne E. Thompson</u>
ANNE E. THOMPSON, U.S.D.J.